FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 27, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GLADYS Z.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No. 4:18-CV-05062-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 13, 20. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434. *See* Administrative Record (AR) at 1-6, 18, 27. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the Court **GRANTS**

Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed her application for Disability Insurance Benefits on February 25, 2014. *See* AR 18, 162-68. Her alleged onset date of disability was August 2, 2008. AR 162. Her application was initially denied on April 25, 2014, *see* AR 94-100, and on reconsideration on July 10, 2014. *See* AR 102-106. Plaintiff then filed a request for a hearing on August 20, 2014. AR 107-08.

A hearing with Administrative Law Judge ("ALJ") Glenn G. Meyers occurred on May 24, 2016. AR 32, 34. On January 13, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits. AR 15-27. On February 9, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On April 10, 2018, Plaintiff timely filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159.

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the court must uphold that decision.

*Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here.  Plaintiff was 44 years old on the alleged date of onset, which the regulations define as a younger person. AR 67; *see* 20 C.F.R. § 404.1563(c). She graduated from high school and can communicate in English. AR 180, 182. Plaintiff has past work as a medical social worker. AR 25, 58, 182.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from August 2, 2008 (the alleged onset date) through December 1, 2013 (the date last insured). AR 18-19, 27.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured (citing 20 C.F.R. § 404.1571 *et seq*.). AR 20.

**At step two**, the ALJ found Plaintiff had the following severe impairment: systematic lupus erythematosus (citing 20 C.F.R. § 404.1520(c)). AR 20.

**At step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 22.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), including the abilities to occasionally handle, finger, push and pull with her upper extremities, stoop, kneel, crouch, crawl, and climb ramps and stairs. AR 22. The ALJ found that Plaintiff could not climb ladders, ropes, or scaffolds. AR 22. The ALJ further found that Plaintiff would miss work five times per year and be off task 10% of the time, but could still meet minimum production requirements. AR 22. Given these limitations, the ALJ found that Plaintiff was unable to perform her past relevant work as a medical social worker. AR 25.

At step five, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that she could perform. AR 26. These included a furniture rental consultant, a counter clerk, and a conveyer line bakery worker. AR 26-27.

## VI.    Issues for Review

Plaintiff argues that the Commissioner's decision "is based on legal error and is not supported by substantial evidence." ECF No. 13 at 8. Specifically, she argues the ALJ: (1) improperly evaluated and weighed the medical opinion of Meneleo T. Lilagan, M.D.; (2) improperly rejected numerous severe impairments at step two; (3) failed to fully analyze whether her impairments met or equaled

Listing 14.02 at step three; (4) improperly rejected her husband's lay witness statement; (5) improperly discredited her subjective pain complaint testimony; and (6) failed to meet the Commissioner's burden at step five to show that she could perform other jobs that existed in significant numbers in the national economy. *Id.* at 5.

## VII.   Discussion

**A.   The ALJ did not Err in Weighing the Medical Opinion of Meneleo T. Lilagan, M.D.**

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence. ECF No. 13 at 8-11. Specifically, she argues the ALJ erred in weighing the medical opinion from one provider: treating physician Dr. Lilagan. *Id.*

### 1.   Legal standards

Title II's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining

physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies the "specific and legitimate" standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy the standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

### 2.    ALJ's consideration of Dr. Lilagan's opinion

Meneleo T. Lilagan, M.D. is a family practice physician who treated Plaintiff from March 2010 to April 2016. AR 442, 611. In April 2016, he submitted a report discussing Plaintiff's diagnoses, symptoms, treatment, and work limitations. AR 611-13. He diagnosed Plaintiff with systematic lupus erythematosus and arthritis. AR 611. He stated that Plaintiff's symptoms consisted

of fatigue and joint pain in her left hip, lower back, and right shoulder. AR 611.

Regarding Plaintiff's ability to work, he opined that she was "[s]everely limited,"

unable to lift at least two pounds, unable to stand or walk, and that she would need

to lie down for at least an hour during the day due to fatigue. AR 611-12. He

opined that she would miss four or more days of work per month due to

"exacerbation of her joint pain." AR 612.

To support these limitations, the form asked Dr. Lilagan to describe in detail

Plaintiff's relevant clinical objective findings, test results, etc. AR 611. Dr. Lilagan

wrote: "Has range of motion difficulty in L hip & R shoulder & presently using

cane for ambulation aid." AR 611. He then stated that the "limitations specified in

this report have existed since at least 6/19/14." AR 613.

The ALJ assigned minimal weight to Dr. Lilagan's opinion. AR 25. First,

the ALJ reasoned that Dr. Lilagan's evaluation did not provide objective findings

that were consistent with his highly restrictive limitations. AR 25. Although he

opined that Plaintiff was essentially completely debilitated, the only objective

findings he offered in support of this conclusion was that she had "range of motion

difficulty in L hip & R shoulder & presently using cane for ambulation aid." AR

611. ALJs may properly discount medical opinions when the doctor does not

explain the basis for his or her limitations or when the opinion is inadequately

supported by clinical findings. *See Thomas*, 278 F.3d at 957; *Batson v. Comm'r of*

*Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *see* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion.").

Plaintiff argues that the range of motion restrictions in her left hip and right shoulder were consistent with and supported Dr. Lilagan's severe functional limitations. ECF No. 13 at 9. But the ALJ found otherwise. AR 25. Plaintiff also cites numerous other records to argue that Dr. Lilagan's opinion was supported by objective findings, but these are all records and findings from other providers. *Id.* at 9-10 (*citing* AR 364, 395, 481, 627, 629, 633, 639).

Second, the ALJ discounted Dr. Lilagan's opinion because: (1) he wrote this report two and a half years after the date last insured (which was December 1, 2013), and (2) he specified in the report that Plaintiff's limitations "existed since at least 6/19/14," which was almost seven months after the date last insured. AR 25, 613. Plaintiff is correct that the ALJ improperly relied on the first rationale—just because a doctor completes an evaluation after the last insured date does not make that opinion irrelevant. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995). However, the ALJ's second rationale was proper—because Dr. Lilagan noted that Plaintiff's limitations began around seven months *after* the date last insured, his

opinion did not actually relate to Plaintiff's claimed period of disability. "Only disabilities that exist before the date last insured can trigger insurance benefits." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). When a doctor's opinion concerns a period after the date last insured, it has little bearing on the claimant's alleged period of disability and is properly discounted. *See Reyes v. Comm'r of Soc. Sec.*, No. 1:18-CV-00749-SAB, 2019 WL 1865916, at *5 (E.D. Cal. 2019). Plaintiff argues that Dr. Lilagan was her longtime treating provider so therefore his opinion was particularly relevant, ECF No. 13 at 10, but this does not change the fact that his opinions relate to a time frame after Plaintiff's claimed period of disability.

Finally, the ALJ discounted Dr. Lilagan's opinion because it was inconsistent with other medical evidence in the record. AR 25. This was proper. *See Batson*, 359 F.3d at 1195; *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Plaintiff argues that this rationale "lacks any specificity and is not legitimate, with no citations to the record." ECF No. 13 at 10. However, the ALJ incorporated his prior three-page, extensive discussion of Plaintiff's rheumatology and orthopedic treatment records as his basis for this rationale. AR 25; *see* AR 22-24. Plaintiff's contention that the ALJ's reasoning "lacks any specificity" and did not cite the record therefore fails.

1    Because the ALJ provided three specific and legitimate reasons for assigning

2    little weight to Dr. Lilagan's opinion, Plaintiff's contention that the ALJ

3    improperly weighed the medical evidence is without merit.

4    **B.    The ALJ Properly Considered Plaintiff's Impairments at Step Two**

5         Plaintiff contends the ALJ improperly rejected numerous severe

6    impairments at step two of the sequential evaluation process. ECF No. 13 at 11-12.

7    Specifically, she argues that the ALJ erred in either rejecting the following

8    impairments or finding that they were not severe: (1) left hip osteoarthritis and

9    trochanteric bursitis; (2) left foot plantar fasciitis; (3) right wrist fracture; (4)

10   hypertension and heart arrythmia; (5) dermatitis/urticaria; (6) Reynaud's

11   syndrome; (7) rheumatoid arthritis; and (8) osteopenia. *Id.*

12        At step two in the sequential evaluation, the ALJ must determine whether a

13   claimant has a medically severe impairment or combination of impairments. 20

14   C.F.R. § 404.1520(a)(4)(ii). First, the claimant must establish that he or she has a

15   medically determinable impairment. 20 C.F.R. § 404.1521. The impairment must

16   last or be expected to last for at least 12 months. 20 C.F.R. §§ 404.1520(a)(4)(ii),

17   404.1509.

18        The impairment must also be established by objective medical evidence—a

19   claimant's statements regarding his or her symptoms are insufficient. 20 C.F.R. §

20   404.1521. Moreover, a diagnosis from an "acceptable medical source," such as a

licensed physician or psychologist, is necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1521. For claims filed before March 27, 2017—such as this one—advanced registered nurse practitioners (ARNPs) do not qualify as "acceptable medical sources." 20 C.F.R. § 404.1502(a)(7).

A diagnosis itself does not mean that an impairment is "severe." *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2001). To be severe, an impairment must significantly limit a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 404.1522(a); *Edlund*, 253 F.3d at 1159.

Plaintiff lists numerous impairments that she contends the ALJ improperly found were not severe. ECF No. 13 at 11-12. However, she simply provides a list, offers minimal substantive discussion, and fails to explain why the ALJ's decision or reasoning constituted error. Accordingly, the Court will address these conditions succinctly. *See Greenwood v. Fed. Aviation Admin.*, 28 F.3d 971, 977 (9th Cir. 1994) (court will not "manufacture arguments for an appellant").

### 1. Left hip osteoarthritis and trochanteric bursitis

The ALJ acknowledged this condition but found it was not severe prior to the date last insured. AR 21. This condition is briefly mentioned once in a chart note from June 2011, *see* AR 368, but otherwise the medical records show no symptoms prior to the date last insured. *See* AR 242-248, 343-360, 361-441, 442-540. Even in July 2014—almost nine months after the date last insured—the

radiologist noted that Plaintiff's hip MRI only revealed "mild degenerative changes," AR 559, and Plaintiff's orthopedic surgeon characterized her left hip arthritis as "minimally symptomatic." AR 596. In light of these records, the ALJ concluded that these conditions did not functionally limit Plaintiff prior to the date last insured. AR 21.

Plaintiff cites the same medical records that the ALJ relied on, but as discussed above, they do not indicate severe symptoms. *See* ECF No. 12 at 11 (*citing* AR 558, 559, 561). But even if they did, these appointments occurred long after the date last insured. *See* AR 558 (October 2014), 559 (July 2014), 561 (October 2014).

### 2. Right wrist fracture

The ALJ also acknowledged this condition but found it was not severe. AR 21. Plaintiff fractured her wrist in May 2013. AR 325. However, it healed quickly, *see* AR 345-349, and by October 2013 it had healed completely. AR 350. At her October 2013 follow-up appointment, her orthopedic surgeon stated that "functionally she [was] doing excellent" and while she had "minor limitation of flexion," the surgeon stated that "this was not impairing her at all." AR 350. Plaintiff herself stated that "her wrist [was] fine." AR 350. Her later medical records reveal no lasting restrictions. AR 395-401, 555-563, 574-610. Plaintiff cites various medical records to contend that this condition was severe, but these

records are all from treatment she received immediately after the fracture occurred. *See* ECF No. 13 at 11 (*citing* AR 325-27, 333, 349, 552). Impairments that do not last at least 12 months are not considered "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509.

### 3. Hypertension and heart arrythmia

The ALJ acknowledged that Plaintiff has hypertension but found that it was well-controlled with medication. AR 21; *see* AR 242-248, 362. The ALJ further noted that Plaintiff had a brief (six hour) episode of heart arrhythmia in March 2010 due to untreated hypertension. AR 24; *see* 242-48. After seeking treatment, Plaintiff's doctor repeatedly stated that her hypertension was "under good control with a combination of medications." AR 362; *see also* 364, 366, 367, 446, 509, 532. Her cardiologist noted that she was "completely asymptomatic at present with controlled blood pressure and heart rate." AR 243; *see also* AR 532. Throughout the subsequent medical record she had a normal heart rate, no palpitations, no shortness of breath, and no further instances of heart arrythmia or other cardiac symptoms. *See* AR 362-401, 366, 442-43, 444-45, 470, 479, 482, 485, 489, 492, 498, 503, 507, 532, 574-75, 576-77, 590, 598, 602, 608.

### 4. Dermatitis/urticaria (hives)

The ALJ considered these to be part and parcel of Plaintiff's lupus condition and analyzed them as such. *See* AR 20; *see also* AR 578 ("patient has had chronic

urticaria in the past which was thought to be related to her lupus."). Because the ALJ found that Plaintiff's lupus condition was in fact severe, Plaintiff's contention lacks merit.

### 5.    Reynaud's syndrome

The ALJ noted that a few records from 2010 mention a diagnosis of Reynaud's syndrome in passing. AR 21; *see* 242, 247, 366. However, the ALJ reasoned that none of these records specified what actual symptoms Plaintiff was experiencing—they just stated the fact that Plaintiff had Reynaud's disease. AR 21; *see* 242, 247. Plaintiff cites several medical records, but these records only state that she "experience[d] symptoms of Reynaud's"—they do not specify what the symptoms were. ECF No. 13 at 12 (*citing* AR 366, 532); AR 366. The ALJ also noted that the subsequent medical records did not reveal any hand limitations due to Reynaud's disease. AR 21.

### 6.    Left foot plantar fasciitis

Like Plaintiff's skin conditions, the ALJ considered this and Plaintiff's other foot issues to be part and parcel of her broader lupus condition and analyzed them as such. *See* AR 22-23. Moreover, Plaintiff points to only one occurrence of this symptom, which was in September 2012. ECF No. 13 at 11; *see* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509 (impairments that do not last at least 12 months are not considered "severe"). Additionally, this was diagnosed by a nurse practitioner,

who is not "an acceptable medical source." AR 385, 490; *see* 20 C.F.R. § 404.1502(a)(7).

### 7. Rheumatoid arthritis

The ALJ expressly stated at step two that "in formulating the residual functional capacity" he "accounted for any limitations" due to Plaintiff's rheumatoid arthritis in her hands and fingers. AR 21. Plaintiff fails to explain how this was error. *See* ECF No. 13 at 12.

### 8. Osteopenia/osteoporosis

The ALJ noted that Plaintiff's imaging revealed osteoporosis, *see* AR 439, but found it was not a "severe" impairment because there was no evidence of it causing any pain or functional limitations. AR 21. Plaintiff cites the imaging study confirming the existence of this condition but does not explain what functional limitations this impairment caused, if any. ECF No. 13 at 12 (*citing* AR 439).

## C. Plaintiff Fails to Establish that the ALJ Erred in Concluding that her Lupus Impairment did not Meet a Listing at Step Three

Plaintiff tersely argues that the ALJ "did not make adequate findings" in analyzing whether her lupus condition met or equaled Listing 14.02. ECF No. 13 at 12. She argues the ALJ failed to "consider all relevant evidence" before concluding that her lupus condition did not satisfy the listings and asks the Court to remand so the ALJ can "make initial findings at step three." *Id.*

However, in concluding that Plaintiff did not satisfy this listing, the ALJ incorporated his extensive subsequent analysis at step four. AR 22. In doing so, the ALJ found that Plaintiff's symptoms were not moderately severe for one or more bodily systems. AR 22; *see* Listing 14.02(A)(1). Again incorporating his extensive step four analysis, the ALJ also found that Plaintiff failed to establish at least two of the constitutional symptoms (*e.g.*, severe fatigue, fever, malaise, or involuntary weight loss), nor did she establish marked limitations in her activities of daily living, social functioning, or concentration, persistence, or pace. AR 22; *see* Listing 14.02(A)(2), (B), (B)(1)-(3).

Plaintiff appears to fault the ALJ because the evidence on which he relied is not contained specifically within the ALJ's step three discussion. ECF No. 13 at 12-13. However, there is no requirement that the ALJ's rationale must be in a particular place in the decision. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001); *see also Kruchek v. Barnhart*, 125 Fed. App'x. 825, 827 (9th Cir. 2005) (ALJ adequately analyzed evidence elsewhere in decision). Specifically pertaining to this situation, it is permissible for ALJs to discuss and evaluate evidence at step four to support their step three conclusion that a claimant's impairments do not equal a listing. *See Harris v. Astrue*, No. CV 08-0831-JSW, 2009 WL 801347, at *7 (N.D. Cal. 2009).

Plaintiff also very tersely argues that she meets Listing 14.02 and recites the elements of this listing. *See* ECF No. 13 at 13. But because she does not offer any substantive analysis or cite to the medical record, the Court declines to address this issue further. *See Greenwood*, 28 F.3d at 977.

**D.     The ALJ did not Improperly Reject Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by discounting the credibility of her testimony regarding her subjective symptoms. ECF No. 13 at 15-18.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering "specific, clear, and convincing reasons" for doing so. *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or

inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

Here, the ALJ found that the medically determinable impairments could reasonably be expected to produce only some of the symptoms Plaintiff alleged. AR 23. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.[1] AR 23.

The ALJ provided multiple clear and convincing reasons for discrediting Plaintiff's subjective complaint testimony. AR 23-25. First, the ALJ discounted Plaintiff's subjective complaints because he found that she stopped working for reasons unrelated to her medical conditions. AR 23. Plaintiff testified that she was diagnosed with lupus in May 2008 and had to quit working shortly thereafter due to her symptoms. AR 42-46. However, she never provided any treatment notes or other evidence from before 2010. AR 23. And even in 2010 she still had minimal symptoms, despite the fact that she was not being treated at the time. AR 23; *see* AR 362-63. Moreover, she told her doctor that she "retired" in 2008 rather than needing to quit for medical reasons. AR 516. Finally, she did not apply for Social

---

[1] Plaintiff argues the ALJ did not "specifically identify what testimony was not credible or why." ECF No. 13 at 16. However, the ALJ expressly recited the contents of the Plaintiff's testimony that he found not entirely credible. *See* AR 22-23. As explained *infra*, he also gave clear and convincing reasons for why it was not credible.

Security benefits until 2014, almost six years after her condition allegedly required her to quit working. AR 162. This all suggested to the ALJ that Plaintiff stopped working for reasons other than her lupus symptoms. AR 23. This was a proper basis to discredit her subjective pain testimony. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001).

Plaintiff argues the ALJ should not have discounted her credibility on this basis because it "offers no insight into [her] actual functioning." ECF No. 13 at 16. However, the rationale underlying this rule is that if one stops work for reasons unrelated to one's medical impairments, this implies that the conditions are not especially limiting. *See Bruton*, 268 F.3d at 828. Plaintiff also argues that she did in fact provide treatment notes from prior to 2010. ECF No. 13 at 16. However, the records she cites in support of this argument are from July 2011, July 2013, and December 2015. *Id.* (*citing* AR 296, 297, 578, 619)

Second, the ALJ discounted Plaintiff's pain complaint testimony because it was inconsistent with her reports to her providers. AR 23-24. For example, Plaintiff testified that she suffers from severe wrist problems due to the prior fracture. AR 54. However, the medical records established that the fracture healed within a few months, her surgeon stated it was "not impairing her at all," and she herself stated that it was "fine." AR 350. She testified about having "brain fog," shakiness, and fatigue, AR 41, 55-56, but denied these symptoms to her providers.

AR 362, 399, 442. She also testified that she experienced ongoing heart issues and palpitations, although her heart examinations were consistently normal, her conditions were well-controlled with medication, and her cardiologist opined that her heart was "completely asymptomatic." *See infra* at 16-17. These inconsistencies were also a proper basis for discounting her testimony. *Smolen*, 80 F.3d at 1284.

Plaintiff argues that "the ALJ offered little more than vague assertions that the claimant's allegations are inconsistent with the evidence." ECF No. 13 at 17. But these were not "vague assertions"—they were specific and supported by detailed cites to the record. AR 23-24. Plaintiff also appears to argue that the ALJ rejected her subjective pain complaints because she did not produce objective medical evidence of the pain itself. ECF No. 13 at 17. While Plaintiff is correct that this would be error, *see Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), this is not what the ALJ did. Rather, the ALJ discredited her testimony because the medical records affirmatively contradicted it, which is permissible. AR 23-24. Plaintiff also argues that her testimony did not actually conflict with the evidence because the ALJ improperly rejected Dr. Lilagan's opinion and failed to account for several severe impairments including her degenerative conditions. ECF No. 13 at 17. These arguments are derivative of those the Court has already rejected. *See infra* at 9-18.

Finally, the ALJ discounted Plaintiff's allegations of debilitating limitations because they were inconsistent with the medical record. AR 24. Her rheumatologist documented normal examinations, minimal skin abnormalities, and normal neuromuscular findings. AR 362-63, 364, 366, 367. Later on, throughout 2013, the rheumatologist's notes reflected few complaints of pain, swelling, or other symptoms associated with lupus. AR 372-401. In December 2013 (around the date last insured), Plaintiff stated that she was doing well and had no complaints. AR 400-01. Her examination was normal and the rheumatologist determined that her lupus was stable. AR 401. An ALJ may discount a claimant's subjective symptom testimony when it is inconsistent with the medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Tonapetyan*, 242 F.3d at 1148.

Plaintiff argues the ALJ "cherry-picked treatment notes purportedly demonstrating improvement with treatment." ECF No. 13 at 18. However, the very records she cites for this argument demonstrate that she in fact improved. *Id.* (*citing* AR 627, 658, 686, 698). The first record she cites was for treatment she received in 2011; she was experiencing "flares" in her lupus condition. *See* AR 627. By her next visit, she was "doing well except for some heel pain." AR 658. Later, she continued doing well and "report[ed] no further flares." AR 686. In the

final record Plaintiff cites, her rheumatologist stated she was "doing well with no specific complaints." AR 698.

When the ALJ presents a reasonable interpretation that is supported by substantial evidence, it is not the Court's role to second-guess it. For the reasons discussed above, the ALJ did not err when discounting Plaintiff's subjective complaint testimony because the ALJ provided multiple clear and convincing reasons for doing so.

## E. The ALJ Properly Rejected Plaintiff's Husband's Lay Witness Statement

Plaintiff argues the ALJ improperly rejected her husband's lay witness third-party function report. ECF No. 13 at 13-15; *see* AR 200-07.

ALJs must consider evidence from lay sources about the claimant's pain, symptoms, and functional limitations. 20 C.F.R. § § 404.1529(c)(3). Competent lay testimony "cannot be disregarded without comment." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). ALJs must give "germane" reasons for discounting this evidence. *Id.*

However, "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114. The Ninth Circuit has held that when a claimant's spouse provides lay testimony that is similar to the claimant's, and the ALJ provides clear and convincing reasons for rejecting the claimant's

testimony, the ALJ may reject the spouse's testimony for the same reasons he or she rejected the claimant's testimony. *See Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009); *see also Luna v. Astrue*, 623 F.3d 1032, 1034 (9th Cir. 2010); *Johnson v. Berryhill*, 708 F. App'x 345, 346 (9th Cir. 2017). This principle also applies to third-party function reports—when a spouse submits a third-party function report regarding the claimant's symptoms and limitations, an ALJ may reject the report for same reason he or she rejected the claimant's testimony. *See McGahuey v. Colvin*, No. 6:13-CV-957-CL, 2014 WL 4537542, at *8 (D. Or. 2014).

In this case, Plaintiff's husband submitted a third-party function report regarding his observations of Plaintiff's pain, symptoms, and functional limitations. AR 200-07. This information was virtually identical to Plaintiff's testimony. *Compare* AR 40-58, *with* AR 200-07. For this reason, the ALJ discounted the husband's third-party function report for the same reasons he discounted Plaintiff's subjective symptom testimony. AR 25. And because the ALJ properly discounted Plaintiff's subjective complaints, *see infra* at 20-25, this was proper. *See McGahuey*, 2014 WL 4537542, at *8.

**F.      The ALJ did nor Err at Step Five of the Sequential Evaluation Process**

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process in determining that other jobs existed in significant numbers in the national

economy that she could perform. ECF No. 13 at 18-20. She makes two arguments that are both derivative of her prior arguments: (1) that the ALJ should have applied Medical Vocational (Grid) Rule 201.14; and (2) that the ALJ's hypothetical question to the vocational expert did not include all of her limitations. *Id.*

### 1. The Medical-Vocational Guidelines (Grid) Rule 201.14 is Inapplicable

Plaintiff argues that *if* the ALJ had found that she was limited to sedentary work, and *if* she were between 50 and 54 years old during the claimed period of disability, then Medical-Vocational Rule 201.14 would apply and compel a finding of "disabled." ECF No. 13 at 18-19; *see* 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

But as discussed above, the ALJ found that Plaintiff could perform light work. *See* AR 22. And Plaintiff also did not turn 50 years old until after the date last insured. AR 67. Thus, Rule 201.14—which only applies to sedentary work and individuals between the ages of 50 and 54—is inapplicable. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

### 2. The ALJ did not Err in Framing the Hypothetical Question for the Vocational Expert

Finally, Plaintiff argues that the ALJ erred in framing the hypothetical question for the vocational expert because the question did not include all of her limitations. ECF No. 13 at 19-20. However, the hypothetical the ALJ posed to the

vocational expert was consistent with the ALJ's findings relating to Plaintiff's residual functional capacity. *Compare* AR 22 *with* AR 59. The ALJ included all of Plaintiff's limitations, and the only omitted limitations were those that the ALJ found did not exist. Plaintiff's argument here essentially just restates her prior arguments that the residual functional capacity did not account for all her limitations. Courts routinely reject this argument. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008); *Rollins*, 261 F.3d at 857.

## VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.    Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED.**

3.    Judgment shall be entered in favor of Defendant and the file shall be closed.

   **IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

   **DATED** this 27th day of September, 2019.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge
